The order appealed from should therefore be reversed, and the second report set aside also, and the matter of such compensation taken up de novo under the order of September 15, 1906, by said commissioners, who are stated by both parties to be satisfactory, with costs of this appeal to the appellant to abide the event.   All concur.

---

KEILEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

NEGLIGENCE ⬅136—INJURY TO CHILD—CONTRIBUTORY NEGLIGENCE OF MOTHER—QUESTION FOR JURY.

Evidence in action for the killing of a boy, 3½ years old, by a train on a siding, crossing the street 75 feet from his home, *held* to make the question of contributory negligence of his mother, in letting him go out to play with a little girl, one for the jury, and not of law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⬅136.]

Howard and Woodward, JJ., dissenting.

Appeal from Trial Term, Montgomery County.

Action by Timothy Keiley, administrator of Harold Joseph Keiley, deceased, against the New York Central & Hudson River Railroad Company.   From an order setting aside a verdict for plaintiff, and granting a motion for new trial, plaintiff appeals.   Reversed conditionally.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Homer J. Borst, of Schenectady (Merwyn H. Nellis, of Albany, of counsel), for appellant.

Kernan & Kernan, of Utica (Daniel E. Meegan, of Utica, of counsel), for respondent.

PER CURIAM.   This action was brought by the plaintiff to recover damages for the death of his infant son, caused through the alleged negligence of the defendant.   The defendant operated a spur track in the city of Amsterdam, leading to two industrial plants.   This track crossed Church street at grade, and was operated only at intervals for the purpose of taking in or drawing out freight.   On the day of the accident, December 17, 1912, plaintiff's intestate was in the immediate charge of his mother, the family living in a house about 75 feet from the point where defendant's spur track crossed Church street.   A little girl from the adjoining house came in and asked that plaintiff's intestate, 3 years and 3 months old, be permitted to go out and play with her.   The mother at first demurred, but subsequently relented and helped the child to put on a coat, and the two children went into the street to play.   The mother testified that she had previously warned the child not to go upon the track, but that she did not do so on this oc-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

casion, and that she did not know where they intended going, but assumed that they would not go beyond the front of the home premises. The child was gone from the mother's presence only about 10 minutes, when he was run over by the defendant's engine, running backward and drawing two cars, at the Church street crossing above mentioned. There is no dispute that the defendant's trainmen could see the approach to the crossing on both sides during the time that the engine was running over 1,300 feet, and it is not questioned here that the defendant was negligent in the operation of its engine over this infrequently used spur track. The case was submitted to the jury, under a charge to which no material exception survives, and upon the jury finding in favor of the plaintiff the same was set aside upon motion of the defendant, upon the theory that the mother was negligent, as a matter of law, in permitting the child to be in the street.

We are of opinion that the court has erred in this respect. The conduct of the mother is to be measured by the standard of reasonable care, and what is reasonable care is, in general, to be determined by 12 men from the everyday walks of life, not by the court. This was not the case of a regularly operated railroad; it was a siding, where the defendant ran its engines over the line at irregular intervals, sometimes once or twice a day, at other times five or six times, and under circumstances which permitted it to operate with a higher degree of care than would be practicable where it was necessary to conform to schedules designed for the efficient operation of an entire system. The mother knew, we may assume, the manner of operating this spur; knew that the view of the engineer was unobstructed for a long distance, and that at most only a few passages of the crossing would be made during the hour that might intervene between the time the child went out, at about 11 o'clock, and the noonday meal; she knew that it was not necessary to operate this siding track with great speed, and that children were in the habit of playing in the street near this track, and that this fact was known to the defendant's engineer and others, and that with the exercise of that degree of care which the circumstances permitted and warranted there was no great danger of the accident happening. Moreover, her attention was not called to the intent of the children to go upon the crossing. There was a considerable space within the premises occupied by the family residence; the residence was 75 feet from the track, and the mother testifies that she had no reason to expect the child to go away from the immediate vicinity of the house. This, and the many other circumstances brought out by the evidence, clearly made a question for the jury as to the negligence of the mother. What might be highly negligent in the case of a child habitually dependent upon an older person for guidance and amusement might not be considered such in the case of a child such as this one appears to have been, who was in the habit of playing out, and whose mother was employed in the drudgery of washing at the time of the accident. Negligence is a relative matter; it depends upon all the facts and circumstances, and can rarely be properly determined as a matter of law. Whenever there is a fair basis for disagreement; whenever there is room for a rational argument—it is not the province of the court to

pass upon the question of negligence, though it may properly direct the attention of the jury to the rules which should govern in reaching a determination.

Respondent in its brief says that "careful consideration of the testimony produced on the plaintiff's side of the case entitles us to argue that an adult going over the crossing at Church street, under the circumstances as they existed that morning, in trying to run ahead of an approaching locomotive, with an unobstructed view to the west, with the opportunity as it existed of avoiding accident, would have been chargeable with contributory negligence as a matter of law," and we may readily concede this, without granting that it was the duty of the court to hold in harmony with such argument. The question is not whether the "testimony in the record permitting such a conclusion by the trial justice is undisputed," but whether the evidence was sufficient to convince a jury that the plaintiff's intestate was guilty of such negligence that this negligence was to be imputed to the child's mother in permitting him to be at the point of the accident, and the whole question is involved with so many incidental matters which would enter into the determination to be reached by 12 men that we are clearly of the opinion that the court erred in disposing of the matter as one of law. For instance, there is testimony that the engineer and fireman and two others were upon the engine at the time of the accident; that the engine had come to a stop 40 or 50 feet from the crossing, and had been permitted to drift down the grade without the use of steam, approaching the crossing at about three miles an hour. An adult seeing the engine at a standstill, his mind bent on something else, might walk forward without noticing the approaching engine drifting downgrade without the use of steam; common experience teaches us that many times an engine, moving at this slow pace, proceeds practically without noise when drifting, and it might be that these two children, running towards home, were oblivious to the approach of this engine, just as an adult might have been in the presence of the same circumstances.

If the mother had consented to the child going out to play upon the railroad crossing; if this had been an active track, instead of a siding, where trains were necessarily operated at high speed—a jury might well find that the mother was negligent. But here it was not at least certain that the child intended to go into the street at all; if it did there is no reason why the mother should have anticipated that the child would go toward the railroad rather than away from it. As a matter of probability the chances were exactly equal, so far as anything appears, and there were hundreds of ways in which these two small children might have found amusement, either upon the premises or in the street, entirely apart from the railroad crossing, yet the case has been disposed of as a matter of law, and apparently upon the theory that the mother let her child out to play upon this railroad crossing. The railroad crossing, with the occasional operation of a switching engine over it, was merely one of the incidents surrounding the home of the plaintiff and his family, and all of the facts and circumstances were such as to require the opinion of 12 men, not the judgment of one, in determining the question of negligence on the part of the mother.

The order appealed from should be affirmed, with costs, unless the

152 N.Y.S.—69

plaintiff will stipulate to reduce the verdict to $1,500; if the plaintiff so stipulates, the order should be reversed and the verdict as thus reduced restored, with costs to the plaintiff. All concur, except HOW-ARD and WOODWARD, JJ., who vote for reversal and reinstatement of the verdict without reduction.